CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 29, 2018
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

UNITED STATES OF AMERICA

v.

CHRISTOPHER JAMES MIXELL,

               *Defendant.*

CASE NO. 3:17–cr–00016

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

Defendant Christopher Mixell moved to dismiss the indictment against him for failing to register as required by the Sex Offender Registration and Notification Act (SORNA). The Court recently entered an opinion explaining the denial of his statutory motion to dismiss. (Dkt. 55). This opinion addresses his constitutional motion to dismiss, which argues that Mixell's asserted homelessness turns SORNA's registration requirement into unconstitutional cruel and unusual punishment, as well as a violation of substantive due process.

A short procedural prologue is necessary. The Court previously denied the constitutional motion, with an opinion to follow. (Dkt. 50). In the interim, however, the Court became concerned that it could not decide the motion on the present record. Specifically, the asserted fact of Mixell's homelessness—which serves as the catalyst for his constitutional arguments—was one outside the indictment and had not been stipulated to by the Government. A decision based on such extrinsic facts, which should be developed at trial, is typically improper. *See United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012); *see generally United States v. Hill*, 700 F. App'x 235 (4th Cir. 2017); *United States v. Turner*, 842 F.3d 602 (8th Cir. 2016); *United States v. Pope*, 613 F.3d 1255 (10th Cir. 2010). Nevertheless, because a district court may "consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the

pertinent facts," *Engle*, 676 F.3d at 416 n.7, the Court ordered the parties to discuss whether they could agree to a stipulation of facts relevant to the determination of the motion. They have now done so, dkt. 57, and thus the Court may reach the merits of the motion.

\*

The indictment in this case was filed on December 13, 2017. It alleges that "between in or about early 2017 and on or about April 24, 2017," in the Western District of Virginia, Mixell failed to register or update his registration as required by SORNA. According to parties' Joint Stipulation (JS), Mixell moved to the Western District from New Mexico in late 2016 or early 2017. (JS ¶ 1). He was arrested on April 24, 2017 for failure to register in Albemarle County, Virginia. (JS ¶ 2). At that time, he lived at a property where he provided handyman services in exchange for lodging at first in a trailer on the property, and later in a room at, the property. (*Id.*)

Mixell was then arrested on December 15, 2017, on the federal charge underlying this case. (JS ¶ 3). At that time, he lived in Charlottesville at a motel, paying week-to-week for his room. (Id.) He has lived there continuously during the pendency of this case. (*Id.*). According to the Joint Stipulation, "[d]uring 2017, although Mr. Mixell physically resided at the Red Carpet Inn since some point in 2017, he maintained his mailing address at the Haven at First and Market, 112 Market St., Charlottesville, VA 22902, a multi-resource day shelter for people facing homelessness." (JS ¶ 4). The Joint Stipulation also generally states that "Mixell has been transient, living in many different states, having many different addresses, and having also been homeless for periods of time," and that "Mixell has frequently resided with his girlfriend who owns a vehicle." (JS ¶¶ 5–6). The Joint Stipulation does not specify whether or which of these statements apply to Mixell from the period of "early 2017" through "about April 24, 2017," which is the period implicated on the face of the indictment.

\* \*

The Court concludes that these stipulations do not support the conclusion that Mixell was homeless to the extent that his constitutional arguments would have any force. The relevant period for this case is early 2017, running through approximately April 24, 2017. It is during that time that the indictment charges Mixell with failing to register. Mixell does not assert a general constitutional immunity against SORNA's registration requirement. Instead, only by virtue of his asserted homelessness does the Constitution come into play. Put differently, if there was a meaningful portion of time within the indictment period during which Mixell was not homeless, the Constitution would not excuse his failure to register. That is so here.

While the parties agree Mixell has "been homeless for periods of time," (JS ¶ 5), the facts before the Court do not establish that he was homeless for the entirety of the indictment period. The stipulations are indeed to the contrary. The parties agree that Mixell moved to the Western District before or during the indictment period. They agree that, by April 24, he had obtained employment as a handyman on property in Albemarle County. They also agree that, by April 24, he had resided on that property. He did so first in a trailer on the property. He then later procured a room on the same property. Under these circumstances, the Court cannot conclude that Mixell, during the indictment period, was "[s]omeone who ha[d] no accommodation that he . . . is entitled to occupy or that it would be reasonable to occupy[.]" Black's Law Dictionary (10th ed. 2014) (defining "homeless person"). Intermittent homelessness is not a trump card against SORNA's registration requirement.

\* \* \*

Yet even if the stipulations evinced Mixell's homelessness, his constitutional arguments would fail. Mixell's as-applied challenge first rests on the Eighth Amendment's prohibition of

– 3 –

cruel and unusual punishment. He asserts that the "consequences of requiring someone who is chronically homeless or nearly homeless, such as [himself], to register as a sex offender as required under SORNA rises to the level of punishment." (Dkt. 42 at 2). The Court is not persuaded.

There is a two-step test to determine whether a law is punitive in nature. "If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Smith v. Doe*, 538 U.S. 84, 92 (2003) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). Mixell concedes that SORNA has a proper civil purpose—to protect the public from sex offenders and offenders against children. (Dkt. 42 at 3). He thus argues that "SORNA has a punitive effect as applied to transient offenders" to such an extent that the nonpunitive purpose of the statute is overwhelmed. (*Id*.).

"Because we ordinarily defer to the legislature's stated intent, *only the clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith*, 538 U.S. at 92 (emphasis added). The Supreme Court has set out seven, non-exhaustive, non-dispositive factors as "useful guideposts" for this inquiry. *United States v. Under Seal*, 709 F.3d 257, 263 (4th Cir. 2013) (rejecting as-applied Eighth Amendment challenge to SORNA). They are:

(1) Whether the sanction involves an affirmative disability or restraint;

(2) whether it has historically been regarded as a punishment;

(3) whether it comes into play only on a finding of scienter;

(4) whether its operation will promote the traditional aims of punishment—retribution

– 4 –

and deterrence;

(5) whether the behavior to which it applies is already a crime;

(6) whether an alternative purpose to which it may rationally be connected is assignable for it, and;

(7) whether it appears excessive in relation to the alternative purpose assigned.

*See Smith*, 538 U.S. at 97 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963) (setting out factors)).

Mixell does not analyze these factors. He instead argues that because "Virginia requires that every change of address be reported in-person" at a local law enforcement office "within a very short time period,"[1] and because it's onerous for a transient person like himself to do so, SORNA's "registration requirement imposes a [*de facto*] physical restraint on where [he] can go," which thus gives it a punitive effect that overwhelms its plain civil purpose. (Dkt. 42 at 4).

To begin, Mixell does not explain how or why *Virginia*'s asserted registration requirements would make SORNA, the *federal* law he is charged with violating, unconstitutional. His argument also runs up against precedent. The Supreme Court, for example, has upheld Alaska's version of a sex offender registration requirement, writing that:

> The Act imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint. The Act's obligations are less harsh than the sanctions of occupational debarment, which we have held to be nonpunitive. The Act does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences.

*Smith*, 538 U.S. at 100.

The inconvenience or difficulty of reporting one's presence in a jurisdiction is, even for

---

[1] The parties' stipulation directed the Court to Va. Code § 9.1-903, which requires registration within three days of various qualifying events.

homeless offenders, not a restraint in the ordinary or punitive meaning of that word. A reduced ability to move between *entire jurisdictions* (or the hassle of registering once one does) is nothing like being confined to a cell by the power of the state. *See Under Seal*, 709 F.3d at 265 (holding SORNA did not create an affirmative disability or restraint); *Wilson v. Flaherty*, 689 F.3d 332, 333 (4th Cir. 2012) (holding that "sex offender registration requirements and related consequences do not impose sufficiently substantial restraints on Wilson's liberty so as to justify a finding" that he is "in custody" for purposes of habeas statute); *Shaw v. Patton*, 823 F.3d 556, 568 (10th Cir. 2016) (compiling cases holding that "in-person reporting requirements are not considered punitive"); *ACLU of Nevada v. Masto*, 670 F.3d 1046, 1056 (9th Cir. 2012). "SORNA's registration requirements have not been regarded in our national history and traditions as punishment." *Under Seal*, 709 F.3d. at 265. "SORNA does not promote the traditional aims of punishment, such as retribution and deterrence," even though failure to comply with registration might deter other activity. *Id*. at 265. And SORNA also obviously has a "rational connection to a nonpunitive purpose," which is "a most significant factor" indicating that "the statute's effects are not punitive." *Smith*, 538 U.S. at 102; *Under Seal*, 709 F.3d at 266. All told, SORNA's effect is not punitive, even upon homeless sex offenders. "[O]nly the clearest proof will suffice" to turn transform SORNA into a punitive statute, *Smith*, 538 U.S. at 92, and Mixell has not crossed that threshold.

Finally, Mixell conjures the specter of a substantive due process theory, the entirety of which reads: "For Mr. Mixell, SORNA punishes the 'status' of poverty and homeless and therefore his inability to maintain a traditional residence." (Dkt. 42 at 4–5). This sole conclusory statement—followed only by two citations with no analysis of how they apply to this case—is insufficient to raise the issue, and thus it is waived. *Liberty Corp. v. NCNB Nat. Bank*

*of S.C.*, 984 F.2d 1383, 1390 (4th Cir. 1993) (quoting with approval principle that waiver applies to "[a]rguments raised in the District Court in a perfunctory and underdeveloped manner"); *e.g.*, *Williams v. Ozmint*, 716 F.3d 801, 811 (4th Cir. 2013) (finding "fleeting references" insufficient even for generous treatment afforded pro se parties); *Long v. Horton*, 865 F.2d 255, *1 (4th Cir. 1988) (unpublished) (finding "one sentence" in a brief "did not raise th[e] claim with sufficient particularity for the court below").

Mixell's assertion would also fail on the merits. For one, as explained above, SORNA's registration requirement is not punitive, either in intent or effect: It "punishes" nothing, including one's "status of poverty and homelessness." Additionally, the two cases Mixell cites are distinguishable, and one is an out-of-circuit district court case.

In the first, the Supreme Court announced that a state statute making "it a criminal offense for a person to 'be addicted to the use of narcotics'" was cruel and unusual punishment because the state was criminalizing an illness. *Robinson v. California*, 370 U.S. 660, 660 (1962); *id*. at 666 ("[I]n the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment."), 667 ("Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold."). That holding has no purchase here. Mixell is being prosecuted his failure to register, not for having a medical condition, or for being homeless, or for being poor.

As for Mixell's nonbinding district court citation, *Doe v. Snyder*, 101 F. Supp. 3d 772 (E.D. Mich. 2015) ("*Doe II*"), it struck down a state requirement to maintain an identification card because the requirement was "legally impossible to comply" with; to obtain a card, the Michigan Secretary of State required two documents showing the person's address, which a

homeless person could not provide. *Id*. at 724–25. Here, Mixell has not argued, and there is no basis in the record to conclude, that it is actually impossible—as opposed to annoying, inconvenient, or difficult—for him to register as SORNA requires. *See Doe v. Snyder*, 101 F. Supp. 3d 672, 694–95 (E.D. Mich. 2015) (expressing doubt that difficulty of reporting caused by closure of reporting location during final days of reporting period violated due process).[2]

\* \* \* \*

The Court has denied Mixell's constitutional motion for the foregoing reasons. The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion to counsel of record.

Entered this  29th  day of May, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] It is also questionable whether *Doe*'s holding remains intact. On appeal, the Sixth Circuit resolved the case for plaintiffs on other grounds. *Does #1-5 v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016). Because "none of the contested provisions may now be applied to the plaintiffs" on account of the Ex Post Facto clause, the Sixth Circuit observed that the due process arguments "will have to wait for another day," as "anything we would say on those matters would be dicta." *Id*. It then remanded to the district court for entry of judgment "consistent with this opinion." *Id*.